LAW OFFICES OF
HERBERT BEIGEL

38327 S. Arroyo Way
Tucson, Arizona 85739

Office: 520-825-1995
Cellular: 520-869-5836
Facsimile: 520-844-6215
E-mail: hbeigel@gmail.com

767 Fifth Avenue #4700
New York, New York 10153

Herbert Beigel admitted:
Arizona, New York
District of Columbia
Illinois

January 22, 2015

**Via S.D.N.Y. E-Filing and E-mail**

The Honorable Richard J. Sullivan
U.S. District Court for the
Southern District of New York
40 Foley Square
New York, New York 10007

> ### Re:  *CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz et al. (C.A. No. 14 cv 06566)*

Dear Judge Sullivan:

I am lead counsel for Plaintiff (or "CVR") in the above-captioned action, and I am writing to inform Your Honor of recent developments in the litigation subsequently brought against CVR by Defendant Wachtell in New York State court and which is pending before Justice O. Peter Sherwood.

Please be advised that, notwithstanding this Court's December 30, 2014 decision denying Wachtell's motion to dismiss or stay on the basis of abstention, Justice Sherwood scheduled and heard oral argument on Wachtell's motion to dismiss CVR's malpractice counterclaim (a mirror image of this earlier-filed action) on January 14, 2015 (a copy of which is attached).  And, following that hearing, Wachtell has continued to press Judge Sherwood into deciding its motion quickly.  We, however, continue to believe that this matter should be litigated in Your Honor's court, and also enclose a copy of the correspondence the parties transmitted today to Justice Sherwood.

Respectfully submitted,

/s/ Herbert Beigel

cc:  James Sottile, Esq. (Defendants' counsel, via ECF)
Paul Shechtman, Esq. (Defendants' counsel, via ECF)
Robert R. Viducich, Esq. (co-counsel, via ECF)

**Attachment**

**(January 14, 2015 Oral Argument Transcript and**

**January 22, 2015 Correspondence to Justice O. Peter Sherwood)**

```
 1

 2    SUPREME COURT OF THE STATE OF NEW YORK

 3    NEW YORK COUNTY:  CIVIL TERM:   PART 49

 4    ----------------------------------------X
      WACHTELL, LIPTON, ROSEN & KATZ,          : Index No.
 5                                                654343/2013
                      Plaintiff(s).            :
 6
             -against-                         :
 7
      CVR ENERGY, INC.; ICAHN ENTERPRISES, L.P.;
 8    ICAHN ENTERPRISES HOLDINGS L.P.; and
      CARL C. ICAHN,                           :
 9
                      Defendant(s).            :
10    ----------------------------------------X
                           60 Centre Street
11                         New York, New York 10007

12                         January 14,  2015

13    B E F O R E:

14            THE HONORABLE O. PETER SHERWOOD, Justice

15    A P P E A R A N C E S:

16            ZUCKERMAN SPAEDER LLP
              Attorneys for the Plaintiff
17            399 Park Avenue   14th Floor
              New York, NY 10022
18            By:  PAUL SHECHTMAN, ESQ.
                   JAMES SOTTILE,  ESQ.
19                 -and-
              WACHTELL, LIPTON, ROSEN & KATZ
20            51 West 52nd Street
              New York, NY 10019
21            By:  WILLIAM SAVITT, ESQ.

22

23

24

25

26

           JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter
```

```
 1

 2   A P P E A R A N C E S (Cont'd):

 3                      LAW OFFICES OF HERBERT BEIGEL
                        Attorneys for the Defendants
 4                      38327 S. Arroyo Way
                        Tucson, Arizona 85739
 5                          -and-
                        767 Fifth Avenue  #4700
 6                      New York, NY 10153
                        By:  HERBERT BEIGEL, ESQ.
 7                          -and-
                        ROBERT R. VIDUCICH,  ESQ.
 8                      40 Wall Street  28th Floor
                        New York, NY 10005
 9

10

11                              JEANETTE LAKE-MASON, CSR, RMR
                                Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
```

| | |
|---|---|
| 1 | Proceedings |
| 2 | (Whereupon, the following takes place in |
| 3 | open court, in the presence of the Court, Mr. |
| 4 | Shechtman, Mr. Sottile, Mr. Savitt, Mr. |
| 5 | Beigel, and Mr. Viducich:) |
| 6 | THE CLERK:  Calling case number one on the Part |
| 7 | 49 calendar, in the matter of Wachtell v. CVR, index number |
| 8 | 654343 of 2013. |
| 9 | Your appearances for the record, please. |
| 10 | MR. SHECHTMAN:  Judge, Paul Shechtman, for |
| 11 | Wachtell, Lipton.  With me from the Zuckerman firm is Jim |
| 12 | Sottile; and from the Wachtell, Lipton firm, Bill Savitt. |
| 13 | Good afternoon, your Honor. |
| 14 | MR. BEIGEL:  Good afternoon, your Honor.  Herbert |
| 15 | Beigel, for the defendants, with my colleague Robert |
| 16 | Viducich. |
| 17 | THE COURT:  I assume that you will ask -- you |
| 18 | will be arguing for Wachtell, Mr. Shechtman. |
| 19 | MR. SHECHTMAN:  I will, your Honor. |
| 20 | THE COURT:  And, Mr. Beigel, you will be arguing |
| 21 | on behalf of CVR? |
| 22 | MR. BEIGEL:  That's correct. |
| 23 | THE COURT:  Mr. Shechtman, is there anything |
| 24 | you're going to tell me this afternoon that's not already |
| 25 | in your papers?  Because if there's not, I'd like to spend |
| 26 | some time with Mr. Beigel. |

JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1                              Proceedings

2                    MR. SHECHTMAN:  I worked so hard to prepare,

3        Judge, I wish I could answer that question by saying that

4        there's --

5                    THE COURT:  All right, you want to argue.  Go

6        ahead.

7                    MR. SHECHTMAN:  No; but in all seriousness, I

8        think the papers are quite good, and I think they state the

9        argument.  I think it's a straightforward argument.

10                   THE COURT:  Papers on both sides are very good.

11                   MR. SHECHTMAN:  If you will give me a chance to

12       reply if there is anything being said, I'm happy to defer.

13                   THE COURT:  Do you have any problem with that,

14       Mr. Beigel?

15                   MR. BEIGEL:  Not at all, Judge.

16                   THE COURT:  Good.  Well, why don't we start with

17       you then.

18                   MR. BEIGEL:  Your Honor, if you're -- I'd

19       appreciate if you allow me to sit because I have a back

20       problem.

21                   THE COURT:  Whatever makes you comfortable, sir.

22                   MR. BEIGEL:  Well, these days not too much, but I

23       appreciate it.

24                   THE COURT:  Well, whatever makes you less

25       comfortable, or more comfortable than not, less

26       uncomfortable.

1       Proceedings

2           MR. BEIGEL:  Thank you, your Honor.

3           THE COURT:  All right.  It's not a problem at

4       all.

5           All right.  So this is a motion to dismiss your

6       counterclaims in which, I gather, you're seeking to avoid

7       the fees that Wachtell is seeking; and also you want to

8       recover whatever fees may be awarded against your client by

9       the banks.

10          MR. BEIGEL:  Those are the two monetary prayers.

11          THE COURT:  That's the focus of your

12      counterclaim.

13          MR. BEIGEL:  Right, although not in that order.

14          THE COURT:  Pardon.

15          MR. BEIGEL:  Not necessarily in that order of

16      priority.

17          THE COURT:  What difference does it make?

18          MR. BEIGEL:  It doesn't make a difference.  I

19      just wanted to -- you know, context is always useful.

20          THE COURT:  And I think you're right.  And among

21      the things that are part of the context for this afternoon

22      is the fact that this Court has looked at, at least an

23      aspect of this transaction and the controversy that has

24      flowed after it and made a decision; and that case is on

25      appeal.

26          Has the appeal been perfected?

        JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1      ‖                    Proceedings

2      ‖          MR. BEIGEL:  Well, no.  By agreement with the

3      ‖  banks as part of the judgment that was entered, we will be

4      ‖  perfecting the appeal on or before February 20.

5      ‖          THE COURT:  All right.  So I guess that puts us

6      ‖  out to where, maybe May for a decision?

7      ‖          MR. BEIGEL:  May term.  Well, let's see.  Unless

8      ‖  the banks request an extension, the argument would probably

9      ‖  be in the late April or early May.

10     ‖          THE COURT:  Right.

11     ‖          MR. BEIGEL:  And then typically, in my

12     ‖  experience, the First Department takes approximately three

13     ‖  months to render its decisions.

14     ‖          THE COURT:  This is probably a question more

15     ‖  appropriate for Mr. Shechtman, but I'll ask you.

16     ‖          Given that circumstance, is there any urgency for

17     ‖  the Court to do anything on this motion?

18     ‖          MR. BEIGEL:  There isn't.  And if I may just say,

19     ‖  there are other circumstances which I think are relevant to

20     ‖  the lack of urgency, if I may just --

21     ‖          THE COURT:  I mean, is something going on across

22     ‖  the street?

23     ‖          MR. BEIGEL:  Not just that.  There is something

24     ‖  going on across the street, but there is another factor.

25     ‖          THE COURT:  Yes, so I noticed.

26     ‖          MR. BEIGEL:  Excuse me.

1   Proceedings

2           THE COURT: So I noticed.

3           MR. BEIGEL: Yes. Well, it's hard not to notice.

4       I don't want to bore your Honor with things

5   you're already familiar with, but there -- in addition to

6   the fact that there's no urgency, for the reason you just

7   stated, if you recall, after we filed, we being CVR, filed

8   its claim in federal court in Kansas, the declaratory

9   judgment was filed here; and we moved to dismiss count one

10  under the CPLR provision that's commonly referred to as the

11  first to file rule.

12          The Court denied that motion that we filed on the

13  basis of efficiency, your familiarity with the bank

14  litigation; but more significantly, the denial occurred at

15  a time when no one was absolutely certain the case would

16  continue in federal court. As you know, Wachtell then

17  filed its motion to abstain under the Colorado River

18  Doctrine which Judge Sullivan recently denied. So the

19  landscaped has changed.

20          Second, the discovery in this case has gone

21  forward, and it's totally coordinated. In fact, the

22  deadlines before this court and the federal court are the

23  same. And cons -- and discovery cutoff because there was

24  some problem with scheduling depositions, has now been

25  extended from early February to I think late February.

26  Might be off a little bit on that. But the bottom line is,

JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1                              Proceedings

2       given the size of the case, the parties are moving forward

3       very efficiently because we're not talking about one or two

4       depositions.  There have already been five depositions; and

5       in the next -- there's another set of depositions Friday of

6       the general counsel of CVR, and then in two weeks there's

7       another five or six depositions.  There have been hundreds

8       of thousands, in fact -- well, I'll leave it at

9       that -- hundreds of thousands of documents produced.

10              I recognize that Wachtell had a right to file a

11      motion to dismiss, but there's going to be a very

12      significant substantial record submitted in this case.  In

13      addition, there is a schedule contemplates expert

14      designations.  We intend to designate our experts early

15      before the deadline.  And, frankly, your Honor, while one

16      can't assume anything, it's certainly a reasonable

17      likelihood that we would ask this Court's permission to

18      supplement our papers with any matters in the fashion of a

19      letter that might relate to their collateral estoppel

20      motion, and frankly, regardless of how the Court rules, so

21      there could be a complete record on appeal.

22              So I think all of those reasons and the

23      fact -- there's one other fact.  It's not just that there's

24      a federal case; but in their reply brief before your Honor

25      Wachtell said that if you were to deny their motion, they

26      intend to proceed with the exact same motion in federal

        JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1          Proceedings

2     court.  Wachtell just filed their Answer to the federal

3     Complaint yesterday, and their first affirmative defense is

4     the collateral estoppel defense.  And, again, because the

5     timing of both cases is the same, there's just no rush to

6     do any of this.  And, frankly, you know, it would be -- we

7     filed a notice of appeal on your denial of the motion to

8     stay as well.  So whether that ends up, we end up actually

9     perfecting that appeal I think depends on what happens, who

10    does what.  This is a very unusual situation.  But these

11    are all of the reasons why I think from the point of view

12    of context and practicality and the fact the parties are

13    not sitting around doing nothing and the depositions are

14    half done, that the Court simply --

15          THE COURT:  Mr. Beigel, I will come back to you a

16    minute.  Let me just ask the same question of Mr.

17    Shechtman.

18          I think I have a suspicion I know what your

19    answer is, but --

20          MR. SHECHTMAN:  My answer on this one is pretty

21    simple.  This is a collateral estoppel law.  You've found

22    ratification.  You've also found unambiguity.

23          THE COURT:  I will get back to him on that

24    subject.

25          MR. SHECHTMAN:  But once you found ratification,

26    the answer is, obviously, that they knew the material terms

          JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

```
1                          Proceedings
2    of this agreement.
3              When you have a malpractice claim that says you
4    didn't tell them, it doesn't matter if you didn't tell
5    them, you don't have causation.  So you have a complete
6    answer here.  The record can't get better, right?
7    Ratification finding ends this.
8              And so the question becomes why wait.  Two things
9    happen if you wait.  Expenses, right.  The five, six --
10             THE COURT:  I sense from what Mr. Beigel is
11   saying to me that those expenses are going to mount
12   anyway --
13             MR. SHECHTMAN:  Not true --
14             THE COURT:  -- because --
15             MR. SHECHTMAN:  -- respectfully.
16             THE COURT:  -- because you are proceeding in more
17   than one forum.
18             MR. SHECHTMAN:  I promise you the following:  If
19   you were to estop today, we would be in that forum
20   tomorrow, right; and I think they'd be compelled to estop
21   because of collateral estoppel, indeed, in that case
22   because of res judicata.  It's the same parties, same
23   issues.  So there's no reason to think there's going to
24   be any --
25             THE COURT:  So all that says to me is that all
26   roads lead to 25th Street, at the end of the day, all roads
```

1   |   Proceedings

2   |   lead to 25th Street.

3   |          MR. SHECHTMAN:  Oh, I think that's totally right;

4   |   and, and I think that's one of the reasons that one has in

5   |   this state a very sensible rule that says the pendency of

6   |   an appeal from your prior ruling doesn't affect the

7   |   application of estoppel because all roads lead there.  They

8   |   will get there.  If they get a reversal, then presumably,

9   |   all roads lead maybe back here or somewhere else, but --

10  |          THE COURT:  That's what I was afraid of.

11  |          MR. SHECHTMAN:  I, I, I don't think, I don't

12  |   think -- as much of a pleasure it is, I don't think we're

13  |   going to get back, right.

14  |          And if you say to yourself what's urgency, the

15  |   opposite side of the question is what's the non-urgency

16  |   because you're going to have additional depositions, you're

17  |   going to have experts, all of which are unnecessary if your

18  |   finding is right; and on top of that, anything else leads

19  |   to widely inconsistent outcomes.  You could say, well, they

20  |   ratified, but they are guilty or liable.

21  |          THE COURT:  Let's assume that I were to say,

22  |   okay, I was to essentially follow what I did earlier with

23  |   respect to the banks and you go across the street.

24  |          Do you really think that Judge Sullivan is going

25  |   to do anything different other than take his sweet old

26  |   time --

JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

| | |
|---|---|
| 1 | Proceedings |
| 2 | MR. SHECHTMAN:  My experience -- |
| 3 | THE COURT:  -- and get us past May? |
| 4 | MR. SHECHTMAN:  I just want to say my experience |
| 5 | with Judge Sullivan is his sweet old time is usually two |
| 6 | weeks.  He moves rapidly, as does the Court. |
| 7 | I mean, this motion was submitted -- |
| 8 | THE COURT:  I know. |
| 9 | MR. SHECHTMAN:  -- a few weeks.  So this is going |
| 10 | to get itself resolved.  And if you said if we got over |
| 11 | there, is there any answer other than res judicata, there |
| 12 | isn't; you can't allow that inconsistency to exist. |
| 13 | So the answer to the question of urgency is if |
| 14 | your finding is right, and it's right, but in any event, |
| 15 | it's binding, they've had a full and fair opportunity to |
| 16 | litigate, if it's right, then we should just move to |
| 17 | 25th Street; and, presumably, it's as quickly as we can. |
| 18 | THE COURT:  Okay.  You can comment on that |
| 19 | briefly, if you wish, Mr. Beigel; but I do want to get into |
| 20 | this collateral estoppel question. |
| 21 | MR. BEIGEL:  Just very briefly, it's -- you can |
| 22 | say these things two sides of the same coin with respect to |
| 23 | urgency, except for the fact once there really is no |
| 24 | urgency, and it strikes me, listening to Mr. -- |
| 25 | THE COURT:  Well, Mr. Shechtman says that it's |
| 26 | costly, money. |

| | |
|---|---|
| 1 | Proceedings |
| 2 | MR. BEIGEL:  Well, there's the rub, Judge.  Of |
| 3 | all the depositions that I'm going to take, there's exactly |
| 4 | one on count one.  The rest are on count -- |
| 5 | THE COURT:  There's only one on one? |
| 6 | MR. BEIGEL:  Count one, the malpractice count. |
| 7 | Everything else is on counts two and three. |
| 8 | Now, I'm not going to speak for them, but they've |
| 9 | already taken a few depositions, most of which has nothing |
| 10 | to do with malpractice, has everything to do with their |
| 11 | counts two and three.  They're going to take additional |
| 12 | depositions.  It's not as if depositions would be over |
| 13 | tomorrow. |
| 14 | The second thing is that their whole idea about |
| 15 | expense presupposes that you can and should and would |
| 16 | decide their motion today, which in a case like this I am |
| 17 | sure the Court is going to take a prudent amount of time to |
| 18 | decide what is a very significant issue. |
| 19 | The bottom line is that the idea that they'll go |
| 20 | across the street and Judge Sullivan will not explore the |
| 21 | urgency issue the same way you're doing, and |
| 22 | they're assuming that Judge Sullivan will say, well -- in |
| 23 | other words, the question is why not wait; and the only |
| 24 | thing I hear is it cost us money; but you know what, you've |
| 25 | decided the banks' summary judgment months ago.  They could |
| 26 | have moved for a stay of discovery if they had so much |

| | |
|---|---|
| 1 | Proceedings |
| 2 | confidence in their motion.  They didn't.  In fact, they've |
| 3 | pushed harder and aggressively for a tight schedule to |
| 4 | complete discovery.  And I think frankly, honestly -- just |
| 5 | my opinion -- it's a little disingenuous to now come before |
| 6 | the Court and say hurry up and decide, your Honor, because |
| 7 | we're, it's expensive to do depositions. |
| 8 | THE COURT:  All right, okay.  Well, let me hear |
| 9 | what you have to say on this collateral estoppel question. |
| 10 | MR. BEIGEL:  There's a lot of arguments that went |
| 11 | back and forth in briefs; and I think that the con -- an |
| 12 | important concept is important to emphasize; and that is, |
| 13 | let's just assume for the moment that your decision on |
| 14 | ratification was right as a matter of law and that issue |
| 15 | can't be re-litigated. |
| 16 | A long time ago, my first class of law school, I |
| 17 | learned the most important lesson I've ever learned as a |
| 18 | lawyer, which is, you can read an opinion and it makes |
| 19 | perfect sense and it's totally logical, but the premise is |
| 20 | wrong.  And there's a flawed premise here. |
| 21 | The issue that really has to be litigated in this |
| 22 | case is proximate cause; so even if we were to assume that |
| 23 | you are correct that in finding ratification it can't be |
| 24 | re-litigated, there remains a very important question to |
| 25 | which collateral estoppel can't apply.  Did Wachtell, |
| 26 | Lipton proximately cause damage through alleged |

JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

| | |
|---|---|
| 1 | Proceedings |

2        professional negligence by procuring the ratification that

3        your Honor found.  That's a proximate cause issue.

4              They may have, at the appropriate time, a motion

5        for summary judgment that the conduct of CVR has

6        interrupted the proximate cause.  They might have a motion

7        on that, they might have grounds for that; but it's not a

8        collateral estoppel motion.  So even if this Court ruled

9        that we cannot re-litigate ratification or the Appellate

10       First Department affirms your Honor's ruling on that basis,

11       there is still a malpractice case here; and --

12             THE COURT:  Is it fair to characterize the

13       counterclaims as one which alleges malpractice based on the

14       second engagement letter, as opposed to --

15             MR. BEIGEL:  As opposed to what?

16             THE COURT:  -- something else?  Is there more to

17       it than that?

18             MR. BEIGEL:  Yes.

19             THE COURT:  Okay.

20             MR. BEIGEL:  There is more to it.  And this is

21       why collateral es -- the burden is not on us on collateral

22       estoppel, it's on the plaintiff.

23             Your Honor never mentioned a word in your opinion

24       with respect to whether or not any misadvise, bad advice,

25       or other negligent behavior by Wachtell would constitute a

26       defense to the bank action, never mentioned it.  Your Honor

1                              Proceedings

2      never --

3                   THE COURT:   You mean on the -- with respect to --

4                   MR. BEIGEL:  Ratification.

5                   THE COURT:   -- a pre-- the pre-ratification

6      conduct?

7                   MR. BEIGEL:  Right.  As a matter of fact, you

8      went out of your way to say an opinion, and I think based

9      upon the way you approached the decision is correct, you

10     said because I find ratification, I don't have to decide

11     any of those other issues, including the alleged lack of

12     authority.

13                  Your Honor, one of the things that I found

14     fascinating in Wachtell's brief is they made the comment

15     that if Wachtell wrongfully procured the ratification for

16     example, then you couldn't have granted summary judgment

17     for the banks.  That's not correct.

18                  It's interesting that in the context of other

19     cases, if you'll recall from the briefs, there were two

20     cases which we cited that Wachtell attempted to distinguish

21     where lawyers supposedly handled a trial negligently and

22     there was an adverse ruling by that court.  Notwithstanding

23     that, the court allowed a malpractice claim to go against

24     the lawyers.

25                  Now, what Wachtell said in their brief to that,

26     oh, that's a different situation because the plaintiff was

       JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1                                 Proceedings

2      suing the lawyer who represented the same lawyer who's the

3      defendant in the malpractice case; but Wachtell misses the

4      point.  The point is those cases were decided adversely to

5      the plaintiff, that's why they're going after the lawyer.

6              The fact that the court adversely decided against

7      the plaintiff did not foreclose suing the lawyer.  You know

8      why?  Because the issue is proximate cause.  Did the

9      lawyer's negligent behavior, whether it's in a trial, as in

10     those cases, or here in representing, advising CVR, was

11     that conduct the proximate cause of the alleged damage to

12     the plaintiff.  That's not a ratification issue.

13             And then, finally, I'll say the other --

14             THE COURT:  And it's not because of what?

15             MR. BEIGEL:  The issue of whether or not -- I'm

16     sorry.

17             THE COURT:  So malpractice occurs in the first

18     instance pre-ratification.

19             MR. BEIGEL:  Okay.

20             THE COURT:  The malpractice, if you will, I'm

21     using, I'm assuming malpractice occurred.

22             MR. BEIGEL:  Okay, I'll go along with that.

23             THE COURT:  I'm assuming that, an assumption.

24             MR. BEIGEL:  Yes.

25             THE COURT:  Comes to the attention of the board,

26     and they decided to proceed and ratify the actions of its

| | |
|---|---|
| 1 | Proceedings |
| 2 | counsel.  Why doesn't that render this proximate cause |
| 3 | claim that you have -- |
| 4 | MR. BEIGEL:  Well -- |
| 5 | THE COURT:  -- beside the point? |
| 6 | MR. BEIGEL:  That -- the reason is because two |
| 7 | reasons.  One is there's nothing in your opinion to suggest |
| 8 | that you concluded that the malpractice was brought to the |
| 9 | attention of the board.  All that you found was the |
| 10 | following:  You said that shortly after the resolution |
| 11 | was -- |
| 12 | THE COURT:  Let me put it just slightly |
| 13 | differently. |
| 14 | MR. BEIGEL:  Okay. |
| 15 | THE COURT:  That all of the facts necessary to |
| 16 | allow the board to reach a conclusion with respect to |
| 17 | whether or not it was adequately represented were available |
| 18 | to it at the time that it ratified.  Let me get away from |
| 19 | the assumption that it -- |
| 20 | MR. BEIGEL:  Okay. |
| 21 | THE COURT:  -- that it reached that conclusion. |
| 22 | MR. BEIGEL:  And let me respond to that, if I |
| 23 | may. |
| 24 | THE COURT:  All right. |
| 25 | MR. BEIGEL:  Let's take your assumption and the |
| 26 | board sits there and says to themselves I can't believe we |

JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1

2    have this agreement that was signed, I can't believe, but

3    we signed, but it's signed, and we're stuck with it, we're

4    stuck with it; so we have no choice, but to pay the banks.

5                THE COURT:  Well those aren't the facts that are

6    alleged here.  That's for sure.

7                MR. BEIGEL:  Well, but the point here is

8    collateral estoppel.

9                All you said was that the board, knowing what the

10   fees were, passed the resolution; but if the, if the point

11   is -- but the point can't be that you cannot sue the

12   lawyers who procured that resolution because you're now

13   making an assumption that's nowhere to be found in your

14   opinion.  And in fact, if you had put that in your opinion,

15   you would be finding something which you never found, which

16   is that Wachtell, Wachtell's negligent procurement of the

17   resolution is somehow a defense.

18               In fact, one of the comments you made in your

19   opinion was, again, when you're not addressed -- think

20   about -- let's think about it this way.  The law of

21   collateral estoppel is it has to be necessary to the

22   decision in order for there to be issue of preclusion.  It

23   wasn't necessary to your decision to find that Wachtell did

24   or did not negligently procure the resolution.  As I said

25   at the outset of my comments, I don't doubt that at some

26   point in time Wachtell will argue that there's no proximate

JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1          Proceedings

2    cause; but collateral issue is a special, a special

3    doctrine that is not a proximate cause doctrine.  It's the

4    doctrine to avoid re-litigating an issue.  It doesn't

5    foreclose you from at the appropriate time ruling on a

6    motion for summary judgment that because of the

7    ratification there is no claim of proximate cause.  That's

8    not the same kind of decision as you finding that the issue

9    has already been litigated.

10         Now, I don't happen to agree, when we get to the

11   appropriate time, that Wachtell -- that we can't satisfy

12   proximate cause for a lot of reasons that aren't in the

13   record.  And I'll just give an example of why it's

14   important not to apply collateral estoppel here because the

15   record that your Honor relied on for collateral estoppel is

16   woefully incomplete with respect to the proximate cause.

17         In the couple of days before the resolution

18   was -- and it's just an anecdotal example, there's a lot

19   more.  In a couple of days before the resolution was

20   submitted to the board, Wachtell on a Saturday night until

21   midnight tried to figure out what the engagement letters

22   said the fees would be; and the four lawyers at Wachtell

23   couldn't agree.  They finally came to a consensus that the

24   enterprise of devalued fee would be owed, and they put

25   together a chart that showed that.  They then went to the

26   meeting with CVR, submitted 20 to 30 resolutions, all of

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Proceedings

which were boilerplate, without ever disclosing that

Wachtell itself had trouble figuring out what the fees

were.

This allegation of procuring, wrongfully

procuring the resolution is significant.

Secondly, what isn't in the record and your Honor

didn't consider in the ratification issue is while it's

correct there was no formal revocation of the resolution,

the fact is there was no invoice at the time of the

resolution.  The invoice came several days later; and

immediately the facts would show CVR told the banks that it

didn't believe it owed the money and was reviewing to see

if it had any defenses.  So there was a revocation by

conduct.  But your Honor's opinion doesn't say there was

only ratification because there was no formal revocation;

that was an additional thing you mentioned, which I would

categorize as dictum.  What was the key to your decision is

that the simple approval of the resolution when the board

knew what the fees were an hour or two after it constitutes

ratification.  That's not -- does not collaterally estop a

claim against CVR's lawyers any more than if a lawyer for a

client makes mistakes in litigation it forecloses, under

the two cases we cited, the plaintiff's ability to go

forward.

THE COURT:  Okay.  Well, what about the impact

1                           Proceedings

2    of, I guess, the second engagement letter?

3             MR. BEIGEL:  Impact in what regard, your Honor?

4             Oh, may I just mention one other thing --

5             THE COURT:  I'm sorry, yes.

6             MR. BEIGEL:  That I forgot to mention?

7             It's interesting -- and also this is not

8    addressed in the Court's opinion, in your opinions with

9    respect to the summary judgment -- that when the invoices

10    in fact came the 1st or 2nd of May, the CEO Jack Lapinski

11    called up Wachtell and said we got these invoices, what

12    should we do; and Wachtell responded go find yourself some

13    other lawyer, we're done.

14             THE COURT:  All right.  What I was referring to

15    is I think I recall in, it is the second argument by

16    Wachtell, separate and apart from the collateral estoppel,

17    that there's a second engagement letter in which the fees

18    provisions are pretty straightforward.

19             MR. BEIGEL:  Well, this whole dispute is about

20    the second engagement letters, but I'm not sure I

21    understand the point of the --

22             THE COURT:  I thought there was a separate

23    argument they made.

24             MR. BEIGEL:  Oh, yeah.  The separate argument is

25    twofold.  Well, I think what you're referring to is their

26    argument that the second engage -- to abrogate the second

Proceedings

1

2   engagement letters would have required an illegal fee

3   arrangement with the banks because it would have

4   incentivized the banks to not do a deal with Icahn.  That

5   argument is just wrong, and I can explain why if you'd

6   like.

7        The reason the argument's wrong is that any

8   contingency type arrangement creates an incentive

9   obviously.  If you say you're going to pay somebody for a

10  certain result, that's an incentive, no matter what you do.

11  Nothing in our Complaint against Wachtell, and, frankly,

12  nothing in our Goldman Sachs, Deutsche Bank litigation ever

13  suggests that we -- that the client is trying to get a

14  different fee arrangement that would itself be a negative

15  incentive.  The fact is, the original engagements between

16  the banks and CVR was not a contingency.  It was a flat fee

17  for services.  There's nothing unlawful had the second

18  engagement letters been a flat fee as well.  So this whole

19  argument that somehow --

20        THE COURT:  But if you cut a deal for having a,

21  you know, have a, either a contingent fee agreement or some

22  other agreement as to fees which is clear in its terms --

23        MR. BEIGEL:  Oh, that's their ambiguity argument.

24        THE COURT:  Right.

25        MR. BEIGEL:  But, but here's the problem with

26  their ambiguity argument.  What's necessary to your

```
1                        Proceedings

2     decision is ratification, which is why you didn't

3     formally -- you didn't decide the authority issue.  No

4     matter how clear the agreement was -- let's just assume

5     that our arguments about ambiguity are wrong, that the

6     agreement's clear -- you never decided whether the lack of

7     authority was a defense because you said I don't have to

8     decide that because I find ratification.  Even assuming

9     that the agreements are clear -- I'm not trying to reargue

10    that with your Honor -- assuming the agreements are clear,

11    that doesn't add anything to their motion to dismiss

12    because the sole basis for collateral estoppel is that

13    there's the ratification.

14             Let's assume they don't have collateral estoppel;

15    so they say, well, you should dismiss anyway because the

16    agreements are clear.  What about the lack of authority?

17    You never decided that.  You'd have to decide that here.

18             THE COURT:  Okay, all right.

19             Let me hear from you, Mr. Shechtman.

20             MR. SHECHTMAN:  Can I do it standing up, Judge?

21             THE COURT:  Any -- same thing I said to

22    Mr. Beigel applies to you.  Whatever makes you comfortable,

23    so long as I can see you and hear you.

24             MR. SHECHTMAN:  That sounds good.

25             THE COURT:  That's what counts.

26             MR. SHECHTMAN:  We, we, we agreed on one thing,
```

JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1               Proceedings

2    Mr. Beigel and I; and that is, that the issue here sounds

3    in proximate cause; and that's the extent of the agreement.

4               And so if you say to yourself what is the

5    negligence, the malpractice that's claimed against

6    us -- and I don't know if you have a ready copy of the

7    counterclaim in front of you, Judge.

8               THE COURT:  Yep.

9               MR. SHECHTMAN:  But if you turn to the back of

10   it, this is sort of the simplest place to find it; and I

11   think it is page 26 which is sort of summarizing the

12   malpractice claim.

13              THE COURT:  Paragraph 44?

14              MR. SHECHTMAN:  Paragraph 44.  So you look at A.,

15   right; and A. tells you that Wachtell sinned because it

16   didn't tell CVR what the terms of those agreements are.  B.

17   says it even clearer, never advised.  C. Never

18   communicated.  D. Failed to explain.  E. Failed to explain.

19   F., which is a, I think one says a calumny, is falsified

20   the minutes; but it's irrelevant, it doesn't matter whether

21   the minutes are false or not; it's not part of this story

22   since the question here is what did they know.

23   G. Presented without a resolution, without disclosing.

24   Right?  H. Failed to represent the interests.  That I

25   assume is a, somehow is sort of a general summary.  And

26   then, I., we washed our hands because when it was over, we

JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1

## Proceedings

2    told them it's over.  That can't be malpractice.  So A, B,
3    C, D, E, F, G, H, every one of those is we failed to
4    disclose; that's what this case is about, it's what it's
5    about from the get go.

6         So now you say to yourself the following:  You
7    have made a finding, right.  You have made a finding that
8    they knew the material terms.  At that point, there cannot
9    be proximate cause that our failure to disclose caused any
10   problems.  We think we disclosed, we think that's what the
11   record will show.  But who cares?  Right?  If they knew the
12   material terms, then by definition you can't have proximate
13   cause.  You can't ground a malpractice claim for a lawyer
14   for failing to disclose something the client knew.

15        And I failed Mr. Savitt in the following way:  I
16   promised that within one minute of standing up I would say
17   Schwartz, and I failed him.  But Schwartz is the First
18   Department case, and it is a 1994 case, and it is directly
19   on point.  It is this issue.  It is going after lawyers for
20   failing to disclose what you knew.  And the First
21   Department says you can't do that because you can't meet
22   the second element of a malpractice claim, which is
23   proximate cause.

24        So we're in agreement that this is proximate
25   cause, and we're not in agreement -- I mean, Mr. Beigel
26   keeps using the words "we negligently procured

JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1

2     ratification."  I don't know what that means; but if it

3     meant that we misled them affirmatively, right, then I

4     suppose this goes forward.  But what the Complaint says

5     over and over again -- and I just read you the summary

6     paragraph, I commend to you the 13 paragraphs before

7     it -- failed to disclose, failed to disclose, failed to

8     disclose.

9             You have a Court of Appeals case, Bishop v.

10    Maurer, which says -- and it does it in the context of

11    unanimity, but at the end of the day these arguments are

12    similar -- The complaint here is devoid of any

13    non-conclusory allegation that incorrect advice was given.

14            One could take one word out of that.  It says is

15    devoid of any non-conclusory allegation.  This Complaint is

16    devoid of any allegation.  Right?  This is a case in which

17    the gist of it from beginning to end, I don't know what a

18    stronger word than "gist" is, all of this is about you

19    failed to tell us, when you found they knew.  Right?

20            Now, whether you come at this as a ratification

21    case or you come at it as an unambiguous case, if it's

22    unambiguous, the case law is simple.  If it's unambiguous

23    and you sign an agreement, you can get out of it if your

24    lawyer misled you or if you're incompetent.  Right?

25            Whatever else is true of the client here, it's

26    not incompetent.  And there's no non-conclusory allegation

```
 1                          Proceedings

 2      of misleading because there's no allegation of misleading.

 3              So however you do this, the answer is it's a

 4      proximate cause case, and you've made the finding.  You

 5      found that they knew, and that means game over.  And he's

 6      told totally, right, there are cases, Avon, Houraney, if I

 7      say it right, that make sense.  Your lawyer stands up and

 8      your lawyer bungles a case and you try and you lose and you

 9      sue your lawyer for malpractice and the question is, is it

10      collateral estoppel.

11              How in God's name could it be collateral

12      estoppel, right?  You're suing for bungling the trial that

13      you lost.  But to sue a lawyer for not disclosing what you

14      knew, by definition by Schwartz, can't be malpractice.  And

15      that's what this Complaint is about, and that's what our

16      motion is about.

17              So I'm trying to think if there's anything more I

18      should, I should say.

19              THE COURT:  Before you sit down, would you

20      comment in a sentence or two on the first thing that

21      Mr. Beigel talked about going back to the first question I

22      asked, which has to do with --

23              MR. SHECHTMAN:  Urgency.

24              THE COURT:  -- with going on, First Department.

25      He says, look, you know, it's not -- this case is going to

26      go on anyway.
```

JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1                           Proceedings

2            MR. SHECHTMAN:  You know, it's weird.  He was

3     arguing, Judge, in the followings sense:  If you said to

4     yourself in any case in which somebody makes a collateral

5     estoppel argument, right, that's a winner -- and this, for

6     the reasons I say, is a winner -- somebody could say what's

7     urgency, let's just play it out, right?  And, presumably,

8     the answer to that is if we played it out, the best that

9     could happen is we'd have inconsistent verdicts, and we

10    can't allow that, right; and if we played it out, it would

11    cost.  So the notion that there is some --

12           THE COURT:  It's the cost issue that I'm really

13    focusing on, Mr. Shechtman.  That's really my question.

14           MR. SHECHTMAN:  Well, look, you have cost in the

15    following way.  You have --

16           THE COURT:  Because I am sitting here assuming

17    that, you know, by the time the middle blooming daffodils

18    come out or tulips, we will know what the Second

19    Department -- First Department thinks.

20           But what Mr. Beigel says is either way, the

21    discovery that you're going through -- my deciding this is

22    not going to materially reduce the costs.

23           Isn't that basically what you said?

24           MR. SHECHTMAN:  Where do we go next?

25           MR. BEIGEL:  Uh --

26           MR. SHECHTMAN:  Excuse me.

JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1        Proceedings

2                MR. BEIGEL:  I thought the Judge was looking at

3        me.

4                THE COURT:  I was asking him a question.

5                MR. BEIGEL:  Oh.  You were looking at me.

6                THE COURT:  Yes, I was.  I was asking you a

7        question.

8                MR. SHECHTMAN:  Oh, I apologize.

9                MR. BEIGEL:  Yes, your Honor, because the fact

10       is --

11               THE COURT:  That's all I wanted.

12               MR. BEIGEL:  -- there's --

13               MR. SHECHTMAN:  Let me say the following:  Where

14       do we go next, right?

15               We complete depositions.  Now, Mr. Beigel started

16       by saying that's important here because we're going to

17       create a record that's different than the first case.

18       Well, obviously, you can't do that because that's why you

19       have collateral estoppel.  You had a full and fair

20       opportunity.  Right?

21               But the next thing he says is, well, it's just

22       one witness, right, so presumably it's not much of a record

23       we're creating.

24               But on top of that, where do we go next?  We'd

25       come back with a summary judgment motion.  The summary

26       judgment motion, I take it, is basically this motion,

                JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1     Proceedings

2     right, maybe with some more facts, maybe not; but I don't

3     think you could come out differently.  You'd have to find

4     that they knew.  You found that they knew.

5     And then what do we do?  We'd go over to federal

6     court.  I guess we could make this motion in federal court,

7     right, and say we move to dismiss; or we could do it as a

8     summary judgment motion.  And that's a lot of resources,

9     it's lot of your resources, it's a lot of our resources, on

10    a question which is a simple one, right; assuming they

11    didn't tell them, did it matter if they knew.  And you

12    can't escape that they knew because that's your finding.

13    You can't have ratification.

14    I mean, Judge, here is the last page, if I can

15    find it, the last page of Mr. Beigel's brief on this issue;

16    and I won't pass it up to the Court, I'll just read it to

17    you.  And if I can hand it up, and maybe I could hand it up

18    and make it easier for you if you want, Judge.

19    THE COURT:  No.

20    MR. SHECHTMAN:  And it's page 14 of his brief.

21    And, Judge, while you're looking, I'll say just one more

22    thing on cost.

23    THE COURT:  This is page 14?

24    MR. SHECHTMAN:  Page 14 of their brief.

25    THE COURT:  The first full paragraph begins with

26    the words "in any event"?

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Proceedings

MR. SHECHTMAN:  Yeah.  And look at the last four
words, five words, 10 words.  As it was never even made
aware of the second engagement letters.  Right?

Like, pardon me.  We have a finding that it was
aware of every material fact; so it's -- if that's the
conclusion of this argument, that they weren't aware, you
can't possibly get there unless you're going to say you got
it wrong before, which is the inconsistency that collateral
estoppel meant.

The last thing I just say in terms of urgency,
down the road here are experts and expert depositions.  And
the one thing I've known -- I once testified in this court
as an expert -- You can do well as an expert in a court.
It's expensive and it's time consuming and it's
preparation.  And all of that's unnecessary in a situation
where the answer is they knew; and if they knew, by
definition, can't be proximate cause.

THE COURT:  Thank you.

MR. BEIGEL:  Your Honor, may I briefly comment,
if you don't mind.

THE COURT:  Emphasis on the word "briefly."

MR. BEIGEL:  It will be brief.

THE COURT:  All right.

MR. BEIGEL:  Again, two completely false
premises.  First, the Schwartz case.  Their own quote, He

1       Proceedings

2       entered into the agreement, that is the defendant to be

3       collaterally estopped, knowing the benefits which were to

4       be accorded.

5           He's confusing the knowledge of the board for

6       purposes of ratification with the knowledge of the board

7       and CVR at the time the agreement was entered into two

8       months before.  The Schwartz case doesn't support his

9       position at all.  That's number one.

10          Number two, as to this whole business of urgency,

11      I have to shake my head.  There's a reason why there's no

12      automatic stay of discovery pending a motion to dismiss.

13          THE COURT:  Okay.  You made that argument before.

14          MR. BEIGEL:  No, no.  But, but --

15          THE COURT:  You actually did make that argument

16      before.

17          MR. BEIGEL:  Well, then my memory is going.  It's

18      not just my back, Judge.

19          THE COURT:  All right.

20          MR. SHECHTMAN:  I just -- I'm fine.  Thank the

21      Court.

22          THE COURT:  I will consider the arguments that

23      you've made and give you a decision.  Hopefully, I'll be

24      able to do it relatively quickly.

25          Thank you very much.

26          MR. SHECHTMAN:  We thank the Court.

JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

1          Proceedings

2          Oh, Judge, can we just take literally two minutes

3     of your time on other matters?

4          I promise it won't be long.  If you say no, it's

5     okay.

6          THE COURT:  Does this have to be on the record?

7          MR. SHECHTMAN:  No.

8          MR. BEIGEL:  I'd like it to be on the record,

9     Judge.

10          THE COURT:  Fine.

11          MR. SHECHTMAN:  And I'll just -- just to say the

12     following:  We've sent you a letter.  Mr. Beigel and I

13     obviously disagree on this.  I think his conduct in these

14     depositions has been obstructionist.  We're not asking for

15     any relief.  We're just saying that if it continues, we're

16     likely to come back.  And we gave you that just so when we

17     come back, you know that we're trying.  That's one.

18          Two is we had an order to show cause before you

19     related to the Friedman Kaplan advice.  Friedman Kaplan

20     found it wouldn't go forward, thought it would be

21     ratification and unambiguous.  We're going to ask witnesses

22     about it on Friday.  That's agreed upon by the stipulation.

23     We're also going to -- we have Mr. Gross, who's counsel.

24     We're going to ask him what his view was on these issues.

25     We expect we'll be able to ask them, we hope; but it's just

26     to say that if the answer is we're invoking

1           Proceedings

2       privilege -- all this is at issue because of the abuse of

3       process claim -- we're going to sadly be back on another

4       order to show cause.  It's just by the way of heads-up.

5       We're not looking for any relief.

6               THE COURT:  That's this Friday.

7               MR. SHECHTMAN:  That's this Friday.

8               THE COURT:  Is this going to be an issue,

9       Mr. Beigel?

10              MR. BEIGEL:  I don't even understand what's going

11      on here.  It seems to me you have enough to do than taking

12      up time thinking about things when there's no request for

13      relief.

14              There's going to be an issue with respect to

15      attorney-client privilege as to any counsel for CVR or the

16      Icahn parties other than the one that we voluntarily

17      stipulated could be disclosed.  There's no secret that we

18      will continue to assert the attorney-client privilege with

19      respect to other attorneys.  If they think that's improper,

20      they could have brought, sought relief from you ahead of

21      time.  There's no secret, there's not going to be any

22      surprise.  So to say -- for Mr. Shechtman to stand up

23      today, there's no papers; and to say I'll be back to see

24      you, I don't know what that means.

25              THE COURT:  Who's this lawyer that you're going

26      to be deposing?

                JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter

```
 1                         Proceedings
 2              MR. SHECHTMAN:  Mr. Gross.
 3              MR. BEIGEL:  The general counsel.  He will
 4    testify.
 5              THE COURT:  The current general counsel of CVR?
 6              MR. BEIGEL:  Yeah.  He's not going to testify to
 7    legal advice he gave to his client, which is CVR.  He will
 8    testify to the matters we stipulated to with respect to
 9    another law firm. So for Mr. Shechtman to say, oh, in case
10    Mr. Beigel objects on privilege, we'll be back here, fine,
11    he can come back here with another order to show cause
12    whenever he wants; but I don't know what he's asking today.
13    It sounds like nothing.
14              MR. SHECHTMAN:  Not, not much.
15              THE COURT:  I don't think he's asking anything
16    either.
17              MR. BEIGEL:  He's just giving you a heads-up.
18              THE COURT:  He's just giving me a heads-up.
19              MR. BEIGEL:  Well, okay.  I think you're busy
20    received enough that you don't need heads-up.
21              THE COURT:  Hopefully, you guys won't have to
22    have me involved in that.
23              MR. SHECHTMAN:  Pleasure, sir.  Thank you.
24              (Whereupon, the matter concluded.)
25                       *     *     *
26                  C E R T I F I C A T E
      JEANETTE LAKE-MASON, CSR, RMR, Official Court Reporter
```

1                        Proceedings

2            This is certified to be a true and accurate

3    transcription of the stenographic minutes taken in the

4    above proceedings.

5    _____
     JEANETTE LAKE-MASON, CSR,RMR
6    Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



**ZUCKERMAN SPAEDER** LLP

399 PARK AVENUE   14TH FLOOR
NEW YORK, NY 10022-4614
212.704.9600   212.704.4256 fax   www.zuckerman.com

PAUL SHECHTMAN
Partner
646-746-8657
PShechtman@zuckerman.com

VIA ECF & FEDEX

January 22, 2015

Honorable O. Peter Sherwood
Supreme Court of the State of New York
County of New York
60 Centre Street, Part 49, Room 252
New York, NY 10007

      Re:    Wachtell, Lipton, Rosen & Katz v. CVR Energy, Inc., et al.
             Index No. 654343/2013

Dear Justice Sherwood:

We write to provide supplemental information on three issues raised during the January 13 argument on Wachtell Lipton's collateral estoppel motion that are not related to the merits of the motion and therefore were not treated in the parties' briefs.

(1)    Timing of CVR's Appeal in the Bank Action. The Court inquired as to the likely time for decision of an appeal in the Bank Action. Tr. 6. Summary judgment was entered in that Action more than four months ago, and CVR says that it intends to perfect its appeal on February 20, 2015. Tr. 6. If the banks file responsive briefs within 30 days, oral argument on the appeal would take place in the May Term. See 2015 Calendar, Appellate Division — First Department. Consistent with customary practice, however, it is likely that the banks will request and receive an extension in the briefing date. Tr. 6 (CVR's counsel noting the possibility of an extension); 22 NYCRR § 600.11(g) (providing that one adjournment is granted as a matter of course but precluding adjournments to the June Term). In that probable scenario, the appeal would be held over until the September Term, with argument between September 8, 2015 and October 1, 2015.

CVR's potential appeal will thus be argued at the earliest in the May Term and more likely in the September Term. As CVR recognizes, the First Department typically takes three months from argument to render its decisions. Tr. 6. Accordingly, the likely window for resolution of a CVR appeal would be August 2015 to, more probably, December 2015. See Jacquelyn Mouquin, New York State Appellate Division, First Department: Unraveling the Term Calendar, APPELLATE LAW JOURNAL, at 2 (May 2014) (litigants desiring a decision by year-end should bring their appeal before the September Term).



**ZUCKERMAN SPAEDER LLP**

Honorable O. Peter Sherwood
January 22, 2015
Page 2

(2)   Impact of this Court's Ruling on the SDNY Action. The Court inquired as to the relationship of the pending motion and the federal court proceedings. Tr. 11. As we indicated at argument, if the Court rules that CVR's claims are collaterally estopped, Wachtell Lipton would promptly move to dismiss CVR's federal action under *res judicata*. Where, as here, a "complaint in federal court is identical to [a] complaint in the New York Supreme Court" and the New York court determines that the state complaint is barred on preclusion grounds, the "decision of the New York State Supreme Court itself creates a preclusive effect" requiring dismissal of the federal complaint. *Hameed* v. *Aldana*, 296 F. App'x 154, 155 (2d Cir. 2008). A prompt ruling to that effect is sure to follow given Judge Sullivan's rapid adjudication of all motions to date.

(3)   Costs of Litigation Pending Resolution of the Motion. The Court inquired as to whether its decision on the collateral estoppel motion would reduce litigation costs. Tr. 29. Review of the scheduling orders in this Action and the SDNY action confirm that the answer is yes. Fact discovery in both actions will continue until February 26. Plaintiff intends to depose two party witnesses and three non-party witnesses in that period. Of those five depositions, three will be no longer necessary and will be cancelled in the event the Court finds CVR's counterclaim is estopped. Defendants have noticed four depositions in that period, at least two of which would no longer be necessary in the event CVR's counterclaim is dismissed. Expert disclosure in both actions will take place between February 26 and April 27. Both parties intend to engage at least one expert with respect to CVR's counterclaim. Thus, a finding of collateral estoppel would eliminate the need for five of nine depositions, reduce the scope of the remaining four, and eliminate the need for this costly expert discovery.

Summary judgment motions are due on June 8, 2015. The substantial time and expense of these motions will be avoided if this Court rules now. Furthermore, absent a ruling on this collateral estoppel motion, Wachtell Lipton will be required to present the same collateral estoppel argument to both courts on summary judgment.

We hope this information is helpful to the Court.

Respectfully submitted,

*P. Shechtman /mj*

Paul Shechtman

 **ZUCKERMAN SPAEDER** LLP

Honorable O. Peter Sherwood
January 22, 2015
Page 3

PS:wr

cc:   Herbert Beigel, Esq. (via e-mail)
      Robert R. Viducich, Esq. (via e-mail)

LAW OFFICES OF
HERBERT BEIGEL

38327 S. Arroyo Way
Tucson, Arizona 85739

Office: 520-825-1995
Cellular: 520-869-5836
Facsimile: 520-844-6215
E-mail: hbeigel@gmail.com

767 Fifth Avenue #4700
New York, New York 10153

Herbert Beigel admitted:
Arizona, New York
District of Columbia
Illinois

January 22, 2015

**Via NYSCEF and FedEx**

Honorable O. Peter Sherwood
New York State Supreme Court
Commercial Division
60 Centre Street, Room 252
New York, New York 10007

Re: *Wachtell, Lipton, Rosen & Katz v. CVR Energy, Inc. et al*
*(Index No. 654343/2013)*

Dear Justice Sherwood:

I am responding to the letter of this date sent by counsel for plaintiff, Wachtell, Lipton, Rosen & Katz ("Wachtell").

As the Court is well aware, counsel for the parties had an extensive dialogue with Your Honor on the very scheduling matters discussed in Wachtell's letter. Therefore, Wachtell's letter, in my view, is nothing more than a continued (and otherwise improper) plea that this Court should quickly decide the pending motion to dismiss, a motion that Wachtell apparently assumes is unquestionably meritorious – an assumption with which CVR obviously disagrees, for all the reasons set forth in its opposition brief and at the hearing on January 14, 2014.

Furthermore, I believe Wachtell's persistence in pressing this Court to rush to judgment in the face of a properly first-filed federal lawsuit (which Judge Sullivan rightly refused to dismiss) is but another example of Wachtell's gamesmanship and should not be countenanced. Moreover, as Your Honor is aware, Wachtell never requested a stay of any discovery, and, indeed, insisted on moving forward with discovery, including insisting at great expense that CVR produce millions of pages of documents and provide extensive deposition testimony, which now Wachtell says was unnecessary.[1]

---

[1] We also find it presumptuous for Wachtell to assume that the banks will request an extension of the appeal's briefing schedule given that the banks were the ones who requested that we agree to perfect our appeal early (that is, by February 20). Worse still, it is ironic, if not inappropriate, for Wachtell to be seeking a rush to judgment based on future anticipated costs after causing CVR to unnecessarily incur significant costs in discovery here – and after receiving a $6 million fee from CVR for services that CVR alleges was flawed and caused it many more millions of dollars in damages.

CVR is entitled to a fair adjudication of its malpractice claim and, consistent with that belief, we respectfully urge Your Honor to defer ruling on Wachtell's motion (one way or the other) so as to allow Judge Sullivan to consider the merits of Wachtell's identical defenses, which are included in its responsive pleading to the federal malpractice claim.

Respectfully,

/s/ Herbert Beigel

cc: All counsel of record

2