August 1, 2018

Hon. Richard J. Sullivan
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     *CVR Energy, Inc. v. Wachtell, Lipton, Rosen, & Katz, et al.*, No. 14-cv-06566 (S.D.N.Y.)

Dear Judge Sullivan,

Plaintiff CVR Energy, Inc. ("CVR") wishes to file a motion seeking to terminate or limit a deposition, and so this is a pre-motion letter submitted under Rule 2.G of Your Honor's Individual Rules.  Counsel spoke by telephone regarding the matter at issue for approximately fifteen minutes on Monday, July 23, 2018 and again on Monday July 30, 2018 (with Vincent Levy and Herbert Beigel participating), and previously communicated on Thursday, July 19, 2018, during the deposition that is the subject of this pre-motion letter (with Herbert Beigel and Michael Shuster participating).

<b>Plaintiff's Position</b>

Plaintiff seeks to move under Fed. R. Civ. P. 30(d)(3) for an order terminating or limiting a deposition on the ground that it was being conducted in bad faith, and in a manner to unreasonably annoy, embarrass or oppress the deponent, non-party Carl C. Icahn.  Although the parties technically spoke on two earlier occasions, it was not until Sunday night, when we received Wachtell's second half of this letter, that they actually tried to state a basis, however, flimsy, for continuing the deposition

As the Court may recall, this action involves claims for legal malpractice by CVR against Defendant Wachtell, Lipton. Rosen & Katz and two of its partners (collectively, "Wachtell"). Wachtell subpoenaed Mr. Icahn, who is 82 years old, for a deposition and agreed that he would provide testimony over two days, beginning at 4:00 p.m. and staying until 7:30 p.m. on July 18 and continuing at that same hour the next day, July 19.[1]

---

[1] Wachtell had subpoenaed Mr. Icahn in this action despite (i) the fact that it had already questioned him about CVR's 2012 malpractice claims only a few weeks before, in connection with the New York State action that is currently pending (and which State action accuses Mr. Icahn and CVR of breaching a confidentiality stipulation/order and of abuse of process), and that section 7(e)(iv) of the case management order entered in this action permits depositions taken in that State action to "be used in this action to the same extent as if originally taken in this action"; and (ii) being advised that he was not involved in the U.S. Securities and Exchange Commission's investigation of CVR concerning certain SEC "Form 14D-9" disclosures that are a subject of CVR's complaint here.   Furthermore, Wachtell previously cancelled the depositions of CVR's General Counsel (John Walter) and the General Counsel of Icahn Enterprises (Jesse Lyn), each of whom – unlike Mr. Icahn – actually have some personal knowledge of the SEC investigation, as they chose instead to proceed with the depositions of Mr. Icahn and of CVR's previous General Counsel (Edmund Gross), despite Mr. Gross' limited knowledge regarding the SEC investigation (and despite Wachtell's access to Mr. Gross'

Unfortunately, during the first deposition day (as well as during the prior State court deposition), and from the very beginning of the second (July 19), Wachtell questioned Mr. Icahn about matters that have nothing at all to do with this action and were solely aimed at trying to harass and embarrass him.[2]  The first of those irrelevant matters involved a dispute dating back to 2010, more than two years before the Icahn tender offer, during which the alleged malpractice occurred, involving Mr. Icahn and a film industry company known as Lions Gate, in which he had invested, and which was then represented by Wachtell.  The questioning of Mr. Icahn on the Lionsgate matter was apparently in service of an irrelevant and hopeless theory that Mr. Icahn caused CVR to file the present action as an act of revenge for Wachtell's role in defeating Mr. Icahn's attempt to win a proxy contest concerning Lions Gate.  Worse still, Wachtell then proceeded during the second day to ask questions about Lionsgate for another hour and then began an examination on a matter that is even less relevant here than Lions Gate (if that is even possible): so-called "Renewable Fuel Standard" regulations which the EPA has promulgated, and which requires refiners to either blend "renewable fuels," such as ethanol and biodiesel, into their transportation fuels or purchase renewable fuel credits, known as RINs, in lieu of blending.

The RINs obviously have nothing at all to do with this action, and Wachtell has never bothered to try to argue otherwise.  But the topic is not merely completely irrelevant; it was invoked in bad-faith.  Unlike the irrelevant Lions Gate matter, the irrelevant RINs issue does not involve Wachtell at all and is not a historic one – quite to the contrary, it involves a highly sensitive ongoing issue that is the subject of much public speculation concerning CVR and Mr. Icahn, as well as the focus of certain members of Congress and other politicians.  Indeed, as Mr. Icahn himself (and his counsel) noted during the deposition, asking him about RINs is no more appropriate than asking about his wife and a form of harassment.  Indisputably, any knowledge or efforts by him on CVR's behalf concerning the RINs, five years after Wachtell's alleged malpractice, has nothing whatsoever to do with the present action.  Clearly, Wachtell knows this and sought to question him on this matter in bad faith, simply in an outrageous (if not sanctionable) effort to annoy, embarrass and/or as part of some highly improper (but futile) attempt to intimidate him.

Defendants' late explanation of why their interrogation is not (transparent) harassment is preposterous.  Mr. Icahn has already testified that he had no contact with the SEC regarding the investigation of CVR's SEC Forms 14d-9, prepared by Wachtell in 2012.  Questions concerning whatever dealings he may have had with the E.P.A., or any other federal regulatory agency, including the SEC on other matters or filings, have nothing to do with the SEC's investigation of CVR – and Wachtell has never attempted to explain otherwise.  Moreover, it is apparently their singular purpose to pry into the RINs topic for no legitimate purpose.  Thus, such questions are not some good faith attempt to take discovery but are an obvious, bad faith attempt to harass and embarrass a witness – and one who is not even a party.  Their bad faith is further evident from their desire to question him on the RINs topic for three hours.

---

prior deposition testimony taken in the underlying investment banks' litigation brought against CVR). Accordingly, although we could not then be certain of Wachtell's true intentions, taking Mr. Icahn's deposition here seemed to be part of a pattern of harassing witnesses whose testimony is not really necessary.  But, we nonetheless fulfilled our commitment to allow Wachtell to depose him a second time in the present action.

[2] Plaintiff would be happy to immediately furnish the Court, upon request, with a copy of the July 18 and July 19 deposition transcripts (which Defendants inappropriately designated confidential).

Accordingly, consistent with CVR's prior objections to producing completely irrelevant documents that were sought in bad faith, Mr. Icahn's counsel advised Wachtell's counsel that his questions on that topic would not be permitted, but that he was willing to hear an explanation on what legitimate purpose it would serve. However, Wachtell's counsel did not bother to offer any sort of an explanation why the interrogation served any purpose other than harassment, and further declined the invitation to continue the deposition and ask more questions that actually concerned this action. Instead, after leaving the conference to "confer" with someone, he returned a half hour later and simply said that he disagreed and that the deposition would then be terminated but not concluded.

Finally, CVR's counsel, Herbert Beigel, had previously informed Wachtell's counsel that Mr. Icahn is not a fact witness regarding CVR's malpractice claims, as his deposition clearly confirms. Indeed, Wachtell cancelled two other depositions based on those representations by Mr. Beigel.

In short, Wachtell has abused the discovery process and should not be allowed to do so anymore. Accordingly, we respectfully request that Mr. Icahn's deposition be terminated by Your Honor.

## Defendants' Position

A deponent or party who moves under Federal Rule of Civil Procedure 30(d)(3) to terminate or limit a deposition has the burden of proving that the examination was "being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A); *see In re Omeprazole Patent Litig.*, 2005 WL 818821, at *2 (S.D.N.Y. Feb. 18, 2005), *aff'd*, 227 F.R.D. 227 (S.D.N.Y. 2005). Because Icahn does not remotely meet that burden, his motion should be denied.

*Background.* Four hours into Icahn's deposition time, Wachtell Lipton's counsel asked, "Mr. Icahn, what is the Renewable Fuel Standard?" Tr. 233. It was the first question relating at all to RINs, the subject to which Icahn now objects. Herbert Beigel, counsel to Icahn as well as CVR, immediately responded, "Objection. He's going to now ask you about RINs. This is just harassment." *Id.* He then told Icahn that he had to answer the question but that he could seek sanctions against Wachtell Lipton. *Id.* Wachtell Lipton's counsel repeated the question, and Icahn responded, "It's a hard question to answer. It's a law, I think." *Id.* Wachtell Lipton's counsel followed up by asking Icahn to "Just describe it. In—sort of in layperson's terms, what is it?" Tr. 234. Icahn's counsel again threatened to seek sanctions. Icahn then said, "It's really becoming ridiculous now. Why do I have to explain to you what I believe the Renewable Fuel Standard is?" *Id.* In an extended protest, Icahn refused to answer the question, saying, among other things, "I don't think you have a right to come in and ask me questions. Why don't you say how are you getting along with your wife, and we can discuss that now?" Tr. 234-36. Icahn's counsel then said "we need to take a break" so that he could "discuss with my client what his rights are with respect to these abusive questions." Tr. 237.

After nearly half an hour, he and Icahn reappeared and declared that they were terminating the deposition because the subject of RINs was irrelevant. Tr. 238-39 ("I[f] the court decides that there's any relevance whatsoever to pursuing the subject of the RINs, the Renewable Fuel Standards, or any other unrelated subject, then Mr. Icahn will come back and complete his

deposition.").[3]

   *Argument.*  Nothing in the record justifies Icahn and his counsel's unilateral termination of his deposition.  To the contrary, the record confirms that their termination of the deposition was improper because it was based on their objection to questioning about matters that were—in their view—irrelevant.  This Court and others in this circuit have repeatedly made clear that "[l]ack of relevancy is not a proper ground for instructing a witness not to answer deposition questions" and ordered the continuation of depositions improperly terminated on that ground. *Luc Vets Diamant v. Akush*, 2006 WL 258293, at *1 (S.D.N.Y. Feb. 3, 2006); *see also Weinrib v. Winthrop-University Hosp.*, 2016 WL 1122033, at *3 (E.D.N.Y. Mar. 22, 2016) (same); *Balk v. N.Y. Inst. Tech.*, 2012 WL 5866233, at *2 (E.D.N.Y. Nov. 19, 2012) (same).

   What's more, courts in this circuit have rebuffed attempts by deponents, like Icahn here, to evade this rule by arguing that questioning on supposedly irrelevant topics itself constitutes unreasonably annoying, embarrassing, or oppressive conduct.  In *Maldonado v. Srour*, 2015 WL 5098617, at *2 (E.D.N.Y. Aug. 31, 2015), for example, the court rejected as "meritless" the deponent's argument that the plaintiff had "attempted to annoy, embarrass and oppress [him] by asking irrelevant questions about personal financial information . . . not connected to Plaintiff's claims."  The court reiterated that "[l]ack of relevancy" was not a proper basis for refusing to answer questions and denied the Rule 30(d)(3) motion because "[t]he transcript reveal[ed] no indication that the deposition was conducted in a manner" that violated the Rule.  *Id.*

   Icahn's argument that he is entitled to the premature termination of his deposition is similarly without merit.  The only conduct that he identifies as supposedly improper is the asking of questions he views as irrelevant.  But just because a deponent "does not like a question, does not think it is relevant or fair . . . does not mean that [deposing] counsel is acting unreasonably or in bad faith." *Baines v. City of New York*, 2016 WL 3042787, at *5 (S.D.N.Y. May 27, 2016). As this Court has explained, a deponent "is required to answer all deposition questions regardless of whether he believes them to be irrelevant; a successful 30(d)(3) motion will require a further and more detailed showing of inappropriate conduct."  *Id.*; *see also* 7 *Moore's Federal Practice* (3d ed. 2018) § 30.51 (court's "power to halt or limit examination is sparingly used").

   Icahn's assertion that the "RINs issue" is a "highly sensitive ongoing issue that is the subject of much public speculation" is also not a basis to limit his deposition.  Rule 30(d)(3) does not proscribe inquiry into any "sensitive" matter; rather, it protects deponents from "unreasonably . . . embarrassing" examination.  In any event, it is not Wachtell Lipton's intent to provide fodder for public speculation, but to exercise its right to gather evidence for its defense. Indeed, it was Wachtell Lipton who designated Icahn's deposition transcript as confidential, thus limiting its use to litigation between the parties and barring its public disclosure.  Undermining his own assertion, Icahn incongruously asserts that designation was "inappropriate."

   Icahn's assertion that any questioning "concerning the RINS, five years after Wachtell's alleged malpractice" is irrelevant is also incorrect.  Icahn is CVR's majority stockholder and until June of this year was also the chairman of its board of directors.  The subject of the RINs

---

[3] Wachtell Lipton agreed to depose Icahn on July 18 and 19 in sessions beginning at 4 p.m., despite the needless expense and disruption of conducting a deposition over two days after business hours, only because Icahn's counsel stated that Icahn refused to appear—on any date— before 3 p.m and the alternative was motion practice burdensome to itself and this Court.

4

relates to CVR's dealings with federal regulators regarding its activities, including activities regulated by the SEC, while CVR was under Icahn's control and during the SEC's investigation of CVR for which CVR is seeking damages from Wachtell Lipton. That investigation was not resolved until February 2017. Icahn's contention that Wachtell Lipton is seeking to ask about matters or a time period irrelevant to this action is thus incorrect. Wachtell Lipton is not required to accept the assertion of Icahn's counsel that Icahn "is not a fact witness"—especially when the documentary record already shows otherwise. The purpose of depositions, like other discovery, is to gather information and test assertions. Indeed, "[t]he definition of relevancy under Rule 26 is to be construed broadly" for that very reason. *Balk v. N.Y. Inst. Tech.*, 2012 WL 5866233, at *2 (E.D.N.Y. Nov. 19, 2012) (ordering the continuation of an improperly terminated deposition).

Icahn's argument that he should not have to answer further questions relating to his failed attempt to take over Lions Gate Entertainment Corp. is likewise groundless. He asserts that subject is irrelevant. But, as he acknowledges, Lions Gate, like CVR, was represented by Wachtell Lipton and investigated by the SEC in connection with his takeover attempt. Discovery shows that Icahn himself complained, while pursuing CVR, about prior takeover targets represented by Wachtell Lipton and the amount they spent on advisory fees—an issue at the heart of this action. And CVR's own SEC counsel testified that the SEC had assigned the same team to the CVR investigation that it had assigned to the Lions Gate investigation.[4]

We note, furthermore, that it was CVR and Icahn's unreasonable and incorrect insistence that they had no "relevant" documents responsive to Wachtell Lipton's document requests that necessitated an extended conference with this Court and an atypical arrangement in which Wachtell Lipton reviewed their search term hit results for relevant documents. Feb. 16, 2018 Tr. at 29-30; Dkt. No. 141 at ¶ 7. That search and review process ultimately resulted in the production of more than 40,000 additional documents by CVR and Icahn.

For these reasons, Icahn's Rule 30(d)(3) motion should be denied. Wachtell Lipton requests that the Court order Icahn to appear to complete his deposition between 9 a.m. and noon on August 6, 7, 9, or 10 (when Wachtell Lipton's counsel is available) or another reasonably prompt date agreed to by the parties.

Respectfully submitted,


/s/ Herbert Beigel                                  /s/ Michael Shuster

---

[4] Icahn argues that Wachtell Lipton needlessly deposed him in this action after deposing him in the related state action. But he fails to mention that he and CVR opposed Wachtell Lipton's motion to extend the state action discovery deadline—expressly made to avoid the burden of double depositions. In doing so, Icahn and CVR represented that they did not object to double depositions. *See* Mar. 19, 2018 Letter to Justice Sherwood from Herbert Beigel at 2 ("It is true that a few current and former employees of CVR and Icahn Enterprises might have to sit for two depositions, but they are willing to do so."). They also stipulated in this action that they would not invoke the state depositions to avoid or limit depositions in this action. *See* April 13, 2018 Stipulation Regarding Depositions ¶ 1.